**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| CHRISTOPHER N. CAPUTO, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 19-17204 (FLW) |
| v. | : | |
| | : | **OPINION** |
| WELLS FARGO ADVISORS, LLC, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**WOLFSON, Chief Judge**:

Petitioner Christopher Caputo ("Petitioner") initiated this action against Wells Fargo Advisors, LLC ("Wells Fargo Advisors") to vacate an arbitration award ("Award") that a panel of FINRA arbitrators entered against him in a prior proceeding. Pending before the Court are the following: (1) Petitioner's Motion to vacate the Award; and (2) Wells Fargo Advisor's Cross-Motion to confirm the Award.  For the reasons expressed herein, the Court confirms the Award and denies Petitioner's Motion.

## I.       BACKGROUND AND PROCEDURAL HISTORY

Wells Fargo Advisors is a broker-dealer that is registered with the U.S. Securities and Exchange Commission, and a member of the Financial Industry Regulatory Authority ("FINRA"). On February 17, 2011, Wells Fargo Advisors hired Petitioner on an at-will basis, as a registered financial advisor at its branch office in Spring Lakes, New Jersey. Prior to his employment at Wells Fargo Advisors, Petitioner worked as a financial advisor at UBS Wealth Management.

Pursuant to his contract, Wells Fargo Advisors agreed to provide Petitioner with a "Transitional Bonus" of $1,202,294.00, paid in installments of $12,883.50 once a month from 2011 to 2021. In addition, sometime during his tenure at Wells Fargo Advisors, Petitioner qualified to receive four separate "Production Bonuses" of $240,459.00, because his "total gross production" exceeded specific benchmarks set forth in his contract. Like the transitional bonus, the production bonuses were paid in installments, once a month over the course of a specified period.

Petitioner elected to execute five separate loan agreements (the "Notes") that allowed him to receive each bonus upfront, in a lump sum amount. Under their terms, Petitioner agreed to reimburse Wells Fargo Advisors for the Notes, which each set forth a schedule of debt obligations; the debt obligations were matched each month by the transitional and production bonus installments that Petitioner received. The Notes also contained acceleration provisions triggered upon an event of default, including termination. In such instances, Wells Fargo Advisors was entitled under the Notes to "declare the entire principal balance of [each] Note immediately due and payable."

During Petitioner's tenure at the firm, Wells Fargo Advisors conducted an internal investigation into Petitioner's business practices, which resulted in his discharge on December 2014. Thereafter, on August 4, 2015, Wells Fargo Advisors commenced an arbitration proceeding against Petitioner with FINRA, in order to recoup the outstanding principal owed on the Notes, along with interest, costs, and fees. Petitioner counter-claimed against Wells Fargo Advisors, alleging numerous causes of action, including: breach of contract, unconscionability based on fraudulent inducement, unjust enrichment, breach of the implied duty of good faith and

fair dealing, defamation, fraudulent inducement to accept employment, expungement, and employment law breach.

In resolving the parties' dispute, a FINRA arbitration panel of three members (the "Panel") held over 22 separate hearings that spanned from December 10, 2018 to June 21, 2019, during the course of which more than 13 witnesses testified. On July 26, 2019, following the conclusion of the hearings, the Panel issued a final award (the "Award"). In the Award,[1] the Panel found that Petitioner was liable to Wells Fargo Advisors in the amount of $1,663,529.71 in compensatory damages. The Panel also considered and rejected all of Petitioner's counterclaims against Wells Fargo Advisors. To date, Petitioner has not satisfied his obligations under the Award.

On August 26, 2019, Petitioner filed the instant action to vacate the Award. On October 23, 2019, Petitioner filed a brief in support of his Motion to vacate the Award, wherein he argues, among other things, that the Award is in conflict with certain fundamental pubic policies in connection with the forfeiture of an employee's promised and earned remuneration. On December 2, 2019, Wells Fargo Advisors opposed Petitioner's Motion to vacate, and cross-moved to confirm the Award.

## II.   STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") establishes a "strong presumption" in favor of enforcing arbitration awards. *See Brentwood Med. Assocs. v. UMW*, 396 F.3d 237, 241 (3d Cir. 2005) ("There is a strong presumption under the [FAA] in favor of enforcing arbitration awards . . . ."). As such, a reviewing court must take a limited approach and vacate an arbitration award "in the rarest case[s]." *Newark Morning Ledger Co. v. Newark Typographical Union*, 797 F.2d

---

[1]     Although the Award does not set forth the Panel's reasoning, it is-well established that

162, 165 (3d Cir. 1986). "[M]indful of the strong federal policy in favor of commercial arbitration, [the Court] begin[s] with the presumption that the award is enforceable." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013); *see Rite Aid of N.J., Inc. v. UFCW, Local 1360*, 501 Fed. Appx. 189, 192 (3d Cir. 2012) ("We presume that any arbitration award is valid unless the party seeking to vacate the award "affirmatively show[s]" that it is invalid on one of the grounds listed in the Federal Arbitration Act.") (citations omitted) (alteration in original).

Section 10 of the FAA, however, provides four explicit grounds under which a district court can vacate an arbitration award, including: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct . . . or of any other misbehavior by which the rights to any party have been prejudiced; or (4) where the arbitrators exceeded their powers . . . . " 9 U.S.C.A. § 10(a)(1)-(4). "The party seeking to overturn an award bears a heavy burden, as these are 'exceedingly narrow circumstances,' and courts accord arbitration decisions exceptional deference." *Handley v. Chase Bank USA NA*, 387 Fed. Appx. 166, 168 (3d Cir. 2010) (citation omitted); *see Giant Eagle, Inc. v. United Food & Commerical Workers Union Local 23*, 547 Fed. Appx. 106 (3d Cir. 2013) ("[O]ur review of an arbitration award is quite narrow and we must give substantial deference to the arbitrator's award.") (citation omitted).

On this Motion, Petitioner raises two challenges to the Award: (1) it conflicts with certain public policies; and (2) it was rendered in manifest disregard of the law. Although these grounds are not explicitly set forth in the FAA, the Third Circuit has previously recognized them as additional bases for vacatur. *See Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25 (3d Cir.

2005); *Service Employees Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 92 (3d Cir. 1992). However, importantly, the Supreme Court has since cast doubt on whether a petitioner can continue to dispute an arbitration award, on such non-statutory grounds. In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), the Supreme Court found that parties cannot contract to "expand" or supplement the basis upon which to "review" an arbitration award under the FAA. *Id.* at 583. In so holding, the Supreme Court reasoned that §§ 10 and 11 of the FAA "provide the [statute's] *exclusive grounds* for expedited vacatur and modification." *Id.* at 583 (emphasis added).

A split among the Circuit Courts of Appeals has emerged in the wake of the *Hall Street* decision. In particular, as to the manifest disregard doctrine, the Second, Fourth, and Ninth Circuits have found that it continues to exist as a "judicial gloss" under § 10(a)(4), because arbitrators who render a decision in violation therewith have "exceeded their powers" under that provision of FAA.[2]  On the other hand, the Fifth, Eighth, and Eleventh Circuits have concluded that, in the aftermath of *Hall Street*, the manifest disregard standard no longer survives because it is not enumerated in the FAA.[3] Based on these same reasons, the Circuit Courts of Appeals have,

---

[2]     *See Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012) ("[W]e find that manifest disregard continues to exist as either an independent ground for review or as a judicial gloss [on the statutory grounds for vacatur]."); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) ("We have already determined that the manifest disregard ground for vacatur is shorthand for . . . § 10(a)(4).");*Stolt-Nielsen SA v. AnimalFeeds Intern. Corp.*, 548 U.S. 85, 95 (2d Cir. 2008) (discussing manifest disregard standard "as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA"), *overruled on other grounds*, 559 U.S. 662 (2010).

[3]     *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1324 (11th Cir. 2010) ("We hold that our judicially-created bases for vacatur are no longer valid in light of *Hall Street*."); *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009) ("*Hall Street* unequivocally held that the statutory grounds are the exclusive means for vacatur under the FAA. Our case law defines manifest disregard of the law as a nonstatutory ground for vacatur. Thus, to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating [arbitration] awards."); *Medicine Shoppe Int'l, Inc. v. Turner*, 614 F.3d 485,

too, disagreed on whether the public policy exception continues to serve as cognizable means for challenging an arbitration award. *Compare, e.g., Titan Tire Corp. of Freeport v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 734 F.3d 708, 717 (7th Cir. 2013) ("*Hall Street* Court did not overrule [the] public policy exception to the general prohibition on overturning arbitrator awards."), *with Frazier*, 604 F.3d at 1324 (holding that the Supreme Court barred all extra-statutory grounds for vacatur after the decision in *Hall Street*).

Despite various opportunities, the Third Circuit has declined to weigh in on whether these common law and judicially-created exceptions are still available, in light of the Supreme Court's decision in *Hall Street. See CD&L Realty LLC v. Owens Ill., Inc.*, 535 Fed. Appx. 201, 205 (3d Cir. 2013) ("We assume, without deciding, that the 'violation of public policy' and the 'manifest disregard of law' grounds for vacatur survive [*Hall Street*]."); *see also Rite Aid N.J., Inc. v. United Food Commer. Workers Union, Local 1360*, 449 Fed. Appx. 126, 129 (3d Cir. 2011) ("Assuming, post-*Hall Street*, that an '[a]rbitration award . . . can be vacated when such awards violate public policy,' or exhibit 'manifest disregard for the law,' . . . .") (citation omitted). As such, in the absence of more specific guidance from the Third Circuit, I will presume, for the purposes of this Motion, that these extra-FAA mechanisms continue to exist as a basis for vacatur after *Hall Street*, particularly since neither basis entitles Petitioner to vacate the Award. *See Santomeno v. United States Mineral Prods. Co.*, No. 12-3782, 2013 U.S. Dist. LEXIS 2441, at *23 n.7 (D.N.J. 2013) (assuming that the common law grounds for review of an arbitration award are still viable after *Hall Street*).

---

489 (8th Cir. 2010) ("Appellants' claims, including the claim that the arbitrator disregarded the law, are not included among those specifically enumerated in § 10 and are therefore not cognizable.").

As to public policy violations, the Third Circuit has explained that this exception "'does not . . . sanction a broad judicial power to set aside arbitration awards as against public policy.'" *Service Employees Int'l Union Local 36,* 982 F.2d at 92 (quoting *United States v. Misco*, 484 U.S. 29, 43 (1987)). Rather, according to the Third Circuit, the exception is "limited." *Id*; *see United Transp. Union Local 1589 v. Suburban Transit Corp*., 51 F.3d 376, 382 (3d Cir. 1995) ("In *Service Employees*, we explained that 'the public policy exception' to the enforcement of arbitration awards is slim indeed.") (quotation marks and citations omitted). In that regard, the Third Circuit has instructed that the exception applies only when "the arbitration decision and award create an explicit conflict with an explicit public policy" that is both "well defined and dominant and [can be] ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id*. (quoting *W.R. Grace Company v. International Rubber Workers Union*, 461 U.S. 757, 766 (1983)); *see also First Nat'l Supermarkets v. Retail, Wholesale & Chain Store Food Emples. Union Local 338*, 118 F.3d 892, 897 (2nd Cir. 1997). ("Courts may invoke public policy to vacate an arbitral award "only in those rare cases.").

Likewise, the manifest disregard of the law doctrine is "used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the party of the arbitrators is apparent, but where none of the provisions of the [FAA] apply." *Black Box Corp*, 127 Fed. Appx. at 25 (explaining that, in order to vacate an arbitration award, it must "evidence[] [a] manifest disregard of the law rather than an erroneous interpretation"); *Bender v. Smith Barney, Harris Upham & Co.*, 901 F. Supp. 863, 870 (D.N.J. 1994) ("The 'manifest disregard' doctrine may provide a basis for vacating an award in some circumstances, but its scope is exceedingly narrow[.]"); *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997) ("[T]he

reach of the manifest disregard doctrine is severely limited.") (quotations and citation omitted). As such, a court reviewing an arbitration award for manifest disregard of the law "should not vacate an award unless it finds 'both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Millar*, 274 F. Supp. 2d. 701, 706 (W.D. Pa. 2003) (citations omitted); *New York Tel. Co. v. Communs. Workers Local 1100*, 256 F.3d 89, 91 (2d Cir. 2001).

For the reasons explained *infra*, I find that Petitioner has failed to demonstrate that the dispute, here, concerns a "well defined and dominant" public policy which requires vacatur, or that the Panel rendered an Award in manifest disregard of the law. I turn to Petitioner's public policy arguments.

## III.    DISCUSSION

### A.    Public Policy

First, Petitioner argues that he "earned" five bonuses during his tenure as a financial advisor, based on his "generation of gross commissions" and "exceeding" certain "contractual benchmarks." Petitioner's Opposition Brief ("Petr.'s Opp."), at 8. Petitioner contends that Wells Fargo Advisors paid each of these bonuses in the form of a separate, lump sum "forgivable" loan. *Id*. at 9. Under the terms of his contract, Petitioner maintains that he received bonus installments that offset his obligations under the loans each month, contingent upon his continued tenure with Wells Fargo Advisors. *Id*. However, in the event of his resignation or discharge from Wells Fargo Advisors, Petitioner argues that an unenforceable contractual forfeiture provision stated that he would "forfeit . . . unpaid installments . . . due under [h]is [b]onus[es]." *Id*. At that same time, according to Petitioner, the outstanding balance under all of

his loans "become due in full out of pocket." *Id*. Citing various labor laws, Petitioner argues that the contract's forfeiture provision, in essence, deprived him of "wages" that he "earned," based on his performance at Wells Fargo Advisors. Moreover, according to Petitioner, Wells Fargo Advisors prevented him from working off his loan "obligation[s]," because he was discharged without cause.

I find that Petitioner's contentions do not raise any cognizable public policy concerns. For example, while not exclusive to such circumstances, federal courts will typically vacate arbitration awards on public policy grounds, "where the safety of the general public [is] implicated." *Exxon Shipping Co. v. Exxon Seamen's Union*, 788 F. Supp. 829, 840 (D.N.J. 1992); *see, e.g., Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 666-68 (11th Cir. 1988) (vacating an arbitration award that reinstated a pilot who flew while intoxicated, because he "endangered the lives of his passengers and crew."); *Iowa Elec. Light & Power Co. v. Local Union, 204 of Int'l Bhd. of Elec. Workers*, 834 F.2d 1424, 1427-30 (8th Cir. 1987) (overruling an award that reinstated an employee who violated a "public safety regulation at a nuclear power plant[.]"); *United States Postal Serv. v. American Postal Workers Union*, 736 F.2d 822, 826 (1st Cir. 1984) (overturning an award reinstating a postal worker who was discharged for "embezzling" government funds, as his actions "violated" "the public['s] trust."); *Amalgamated Meat Cutters & Butcher Workmen, Local Union 540 v. Great Western Food Co.*, 712 F.2d 122, 124-25 (5th Cir. 1983) (vacating an award that reinstated a driver who "course[d] the highways in a massive tractor-trailer rig," because he was "caught drinking liquor on duty[.]"); *Amalgamated Meat Cutters & Butcher Workmen v. Jones Dairy Farm*, 680 F.2d 1142, 1144 (7th Cir. 1982) (holding that a company policy which prevented workers who "processed

meat products" from "contacting inspectors" jeopardized "the heath and welfare of consumers[.]").

Unlike the cited cases above, the instant dispute does not implicate notions of public policy or public harm. Petitioner cites to New Jersey and Missouri wage labor statutes, both of which, he submits, are applicable here, and argues that the forfeiture provision in his contract deprives him of owed "sales commissions." However, Petitioner has not shown that his "transitional" and "production" *bonuses* constitute, as he claims, compensable "sales commissions" rather than, for example, supplemental or incentive based forms of income that fall outside of the purview of New Jersey[4] and Missouri[5] labor laws. Nor has Petitioner argued that Wells Fargo Advisors did not compensate him with the portion of his bonuses that accrued before he was terminated—which the arbitration Award did not require him to repay. Rather, to support his wage claims, Petitioner relies on distinguishable case law and authorities which do not involve bargained for provisions requiring employees to remain with a firm, for a specific duration before a bonus vests or accrues, such as the one he contests here. Moreover, based upon

---

[4]    The New Jersey Wage And Hour Law excludes "supplementary incentives and bonuses which are calculated independently of regular wages . . . ." *See* N.J.S.A. 34:11-4.2; *see also Gaytan v. G&G Landscaping Constr., Inc.*, 145 F. Supp. 3d 320,  (D.N.J. 2014) ("Defendant is correct that the NJWPL does not apply to . . . bonuses."); *Sluka v. Landau Uniforms, Inc.*, 383 F. Supp. 2d 649, 656 (D.N.J. 2005) (holding that the NJWHL does not apply to "incentive based" compensation and that "[s]upplementary incentives are the types of incentives that, by definition, are not included under the" statute); *Dubler v. Hangsterfer's Labs.*, No. 09-5144, 2012 U.S. Dist. LEXIS 28386, *18 (D.N.J. Mar. 5, 2012) (finding that the plaintiff's "year-end bonus payment [does] not fall within the WPL's definition of wages."); *Bintliff-Ritchie v. Am. Reinsurance Co.*, No. 05-3802, 2007 U.S. Dist. LEXIS 10469, at *14 (D.N.J. February 15, 2007) (holding that a "bonus" which the plaintiff earned under an "Incentive Compensation Plan" did not constitute "wages").

[5]    In arguing that the disputed compensation, here, constitutes wages under Missouri wage labor law, Petitioner cites to a single unpublished case, *Gustafson v. SAP Am. Inc.*, No. 14-1497, 2015 U.S. Dist. LEXIS 43999 (E.D. Mo. Apr. 3, 2015). However, Petitioner's reliance on that decision is misplaced, as the issue, there, did not concern whether bonuses which were paid in connection with an incentive based compensation structure constituted wages under Missouri labor law.

this Court's own research, no New Jersey or Missouri court has addressed the issue whether such a provision, in a contract that two knowing parties executed, constitutes a violation of public policy. Thus, in the absence of applicable law, Petitioner has not shown that the disputed provision in his contract conflicts with "well defined and dominant" public policies under New Jersey and Missouri labor statutes.[6]

Rather, Petitioner's disputes describe nothing more than a knowing and willing private contractual relationship between himself and Wells Fargo Advisors. Thus, because the parties' dispute, here, is contractual in nature, Petitioner cannot seek to vacate the Award unless he demonstrates that the "arbitrators exceeded their powers" under § 10(a)(4) of the FAA, based on their decision to enforce the Notes as independent and valid loan agreements. 9 U.S.C.A. § 10(a)(4).

Under § 10(a)(4) of the FAA, a court cannot examine the merits of an arbitrator's decision, correct factual or legal errors, or overrule an award based on a mere disagreement with the arbitrator's interpretation of a contract. *W.R. Grace & Company*, 461 U.S. at 764; *Dauphin Precision Tool*, 338 Fed. App'x 219, 222 (3d Cir. 2009). Rather, the court "must enforce an arbitration award if it is based on an arguable interpretation of" a contract. *Dauphin Precision Tool*, 338 Fed. App'x, at 222 (quoting *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996)). A court should not vacate an arbitration award unless it "cannot 'be rationally derived from the agreement between the parties or from the parties' submissions to the arbitrators" or when the terms of the arbitration award itself "are completely irrational." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Schwarzwaelder*, 496 Fed. Appx. 227, 232 (3d Cir. 2012)

---

[6]     Even if, for argument sake, Petitioner can show a bona fide violation of the New Jersey and Missouri labor statutes, *i.e.*, that his bonus installments were wages, this violation, in of itself, does not somehow transform this matter into a public concern, particularly since Petitioner has not persuasively argued that the public at large is harmed by Wells Fargo Advisor's alleged violations of these statutes.

(quoting *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 295 (3d Cir. 2010)).

The Third Circuit has explained that "[t]his is a 'singularly undemanding' standard." *Id*. at 232. Although a court "will not 'rubber stamp' the interpretations and decisions of arbitrators," arbitration awards are entitled to "a strong presumption of correctness." *Id*. (quoting *Matteson v. Ryder Sys. Inc*., 99 F.3d 108, 113 (3d Cir. 1996)); *see Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004). "The parties to an arbitration agreement have bargained for their dispute to be resolved by the arbitrators rather than by the courts." *Id*. (citing *Major League Umpires Ass'n* , 357 F.3d at 280). "The role of the courts is to ask only 'whether the parties . . . got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second would produce a rational award.'" *Id*. (quoting *Brentwood Med. Assocs*., 396 F.3d at 242.); *Brentwood Med. Assocs*., 396 F.3d at 241 ("An award draws its essence from a[n] . . . agreement if its interpretation can in any rational way be derived from the agreement[.]").

Here, it is undisputed that Petitioner was eligible to receive five separate bonuses during his tenure at Wells Fargo Advisors, including one "transitional" and four "production" bonuses. Pursuant to the terms of his employment contract, the bonuses were structured such that Petitioner would acquire them over time, paid once a month in separate installments during the course of a specified period.[7] However, because Petitioner elected to receive the future bonus installments upfront in an immediate lump sum, he executed five separate Notes in amounts

---

[7]     Petitioner does not dispute that he agreed to be compensated in a similar manner at his previous firm, or that this particular compensation structure is common within the securities industry.

equaling each of his bonuses. Notwithstanding the five separate Notes that the parties executed, Wells Fargo Advisors continued to provide Petitioner with transitional and production bonus installments each month, which "offset" Petitioner's monthly debt obligations under the Notes.

Petitioner argues that the Notes do not constitute bona fide loan agreements. Citing out-of-district bankruptcy court cases,[8] Petitioner contends that "[e]ach note should . . . be considered together with the bonus agreement on which the note is predicated." Petr.'s Opp., at 17. Construing these documents in tandem, according to Petitioner, "the supposed loans were not intended . . . to be repaid, but instead . . . forgiven over the course of the 'borrowers' continued employment." Petr.'s Opp., at 18. In support, Petitioner emphasizes that his bonus installments were paid each month, in amounts that matched the obligations which came due under the Notes. Petr.'s Opp., at 9. The "economic effect" of these transactions, Petitioner avers, equates to a "periodic and scheduled forgiveness of [his] outstanding debt." Petr.'s Opp., at 17. Thus, Petitioner contends that the Panel erred in enforcing the Notes and entering an Award against him.

Here, Petitioner fails to present a valid ground for vacatur under the FAA. At best, Petitioner's arguments establish an alternate interpretation of the Notes as a forgivable loan.[9] However, in order to vacate the Award, Petitioner must establish that the Award is "irrational"—

---

[8]     The out-of-district bankruptcy court cases that Petitioner relies upon were not decided under the deferential standard of review that the arbitrators are accorded with on this Motion. *See In re Killian,* 422 B.R. 903 (Bankr. N.D. Ill. 2009); *see also Frymire v. PaineWebber, Inc.*, 107 B.R. 506 (Bankr. E.D. Pa. 1989). Moreover, *In re Killian* did not address the issue of loan forgiveness, but instead whether loaned monies constitute income for tax purposes. In addition to these reasons, Petitioner's reliance on these bankruptcy cases is misplaced as further explained *infra*.

[9]     If the Court accepts Petitioner's contention that the Note is forgivable, he would recover a windfall that he would not have otherwise received under the terms of his contract. Indeed, the Notes allowed Petitioner to obtain future bonus installments upfront, in a lump sum amount that would not have accrued, unless Petitioner remained with Wells Fargo Advisors for a specified period of time.

a demanding burden that he has not satisfied. Indeed, the language in the parties' agreements provides a reasonable basis for the Panel to conclude that the Notes are valid and enforceable loans. *See Ario*, 618 F.3d at 295-96 (A must cannot "overrule an arbitrator simply because [it] disagree[s] . . . . [T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award.") (citing *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)); *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) ("[A]n arbitration award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has misread the  contract.").

First, the parties' agreements, including the Notes and Petitioner's employment contract, do not contain provisions describing the loans as a forgivable loan transaction. Rather, each Note includes an identical paragraph setting forth Petitioner's rights and obligations thereunder: "[Petitioner,] as the undersigned maker of this Note, unconditionally promise[s] to pay to the order of Wells Fargo Advisors, LLC ('WFA'), its affiliates, successors and assigns . . . the principal of . . . . ; [t]he undersigned shall have the right to prepay this Note in full or in part at any time without penalty or amounts so prepaid." Certification of Megan M. Christensen, ¶ 6, Ex. B. The Notes also state that, "upon the occurrence of an event of default," Wells Fargo Advisors reserves the right to "declare the entire unpaid principal balance of [the] Note immediately due and payable[.]" *Id*. In addition, Petitioner's employment contract does not reference the Notes whosoever. Nor does it require the transitional and production bonus installments, which Petitioner received once a month, to be paid towards his debt obligations under the loan agreements.

As such, I conclude that the Panel's decision to enforce each Note as a legitimate loan instrument finds support in the record. *See Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 496 Fed. Appx., at 231 (rejecting the plaintiff's loan forgiveness defense, even though "there [was] a basis . . . to construe the parties' agreements as intending to effect a single transaction akin to a forgivable loan," where, among other things, the parties' agreements did not describe a note "as a form of loan forgiveness" and the plaintiff's employment contract did not require her to use "monthly [bonus] compensation . . . for debt repayment."). I proceed to address Petitioner's arguments in connection with the manifest error doctrine.

### B.   Manifest Error of Law

Petitioner argues that the Panel rendered a decision in manifest disregard of the law. In support, Petitioner contends that, during the arbitration proceedings, Wells Fargo Advisors encouraged the Panel to resolve the parties' dispute based on "industry practice," instead of the applicable law. Petr.'s Opp., at 33. During the hearings, Petitioner also maintains that Wells Fargo Advisors "emphasized that it could discharge [Petitioner] at will," and claimed that a reviewing court was "not entitled to . . . substitute its judgment for that of the arbitral panel, no matter how wrong it may believe the panel's decision to be." *Id.* Citing *Montes v. Shearson Lehman Bros.,* 128 F.3d 1456, 1464 (11th Cir. 1997), Petitioner contends that the representations that Wells Fargo Advisors advanced during the proceedings, in conjunction with the Award which it received, "raise[] an inference that the law was ignored." I disagree.

Here, Petitioner's reliance on *Montes* to establish that the Panel acted in manifest disregard of the law is misplaced. In that case, the Eleventh Circuit found that an arbitration panel violated the manifest disregard doctrine, where the evidence revealed that counsel

"flagrantly and blatantly urged" them to ignore governing authorities. Indeed, in his closing arguments, counsel stated:

> You have to decide whether you're going to follow the statutes that have been presented to you, or whether you will do or want to do or should do what is right and just and equitable in this case. I know it's hard to have to say this and it's probably even harder to hear it but in this case this law is not right. Know that there is a difference between law and equity and I think, in my opinion, that difference is crystallized in this case. The law says one thing. What equity demands and requires and is saying is another. What is right and fair and proper in this? You know as arbitrators you have the ability, you're not strictly bound by case law and precedent. You have the ability to do what is right, what is fair and what is proper, and that's what Shearson is asking you to do.

*Id*. at 1459. The Eleventh Circuit explained that, although the "arbitrators expressly took note of [counsel's] plea in their award when summarizing the parties' arguments[,] . . . nothing in the award or elsewhere in the record . . . indicates that the[] [arbitration panel] did not heed this plea." *Id*. at 1461. As such, according to the Eleventh Circuit, there were no grounds to "refute[] the inference that the law was ignored" under the particular circumstances of that case. *Id*. at 1461, n.8.

The *Montes* decision stands in stark contrast to the factual circumstances of this case. Indeed, such blatant representations are not contained in the record, and the Panel was neither encouraged nor directed to disregard the law in resolving the parties' dispute during the prior proceedings. In addition, and more importantly, because support for the Award can be derived from the terms and provisions of the Notes and Petitioner's contract of employment, the Court cannot infer that the Panel's decision to enforce the loan agreements represents a manifest disregard of the law. *See Black Box Corp*., 127 Fed. App'x, at 25 (explaining that the manifest disregard doctrine is to be used in "rare circumstances where some egregious impropriety on the

part of the arbitrators is apparent[.]"). Thus, this ground fails to provide a basis for vacating the Award.

### C.    Excluded Evidence

Finally, Petitioner contends that the Panel excluded certain evidence during the hearings which would have established that he was discharged from Wells Fargo Advisors without cause. Petr.'s Opp., at 35. To the extent that Petitioner raises this challenge under §§ 10(a)(3) or (a)(4) of the FAA, which requires vacatur when a litigant "has been prejudiced" or where the "arbitrators [have] exceeded their powers," his arguments fail. 9 U.S.C.A. § 10(a)(1),(4). Indeed, while "[a]rbitrators have substantial discretion to admit or exclude evidence[,]" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2nd Cir. 2013), no prejudice can result from the Panel's exclusion of evidence that related to the circumstances of his discharge, because Petitioner's letter offer stated that he was hired on an at-will basis: "[y]our employment with Wells Fargo has no specified term or length. Both you and Wells Fargo have the right to terminate your employment at any time, with or without advance notice and with or without cause. This is called employment at will." *See* Letter Offer. Thus, these grounds fail to provide a basis for vacatur.

## IV.    CONCLUSION

Based on the foregoing, Petitioner's Motion to vacate the Award is **DENIED**. Consequently, because Petitioner has failed to provide a basis for vacatur under the provisions of the FAA or the manifest error doctrine, Wells Fargo Advisor's Cross-Motion to confirm the Award is **GRANTED**.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge