**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER N. CAPUTO, | : |
| Petitioner, | : Civil Action No. 19-17204 (FLW) |
| v. | : |
| | : **OPINION** |
| WELLS FARGO ADVISORS, LLC, | : |
| Respondent. | : |

**WOLFSON, Chief Judge**:

Petitioner Christopher Caputo ("Petitioner") initiated this action against Wells Fargo Advisors, LLC ("WFA") to vacate an arbitration award ("Award") that a panel of FINRA arbitrators entered against him in a prior proceeding. Presently before the Court is a Motion by Petitioner seeking reconsideration of the Court's May 29, 2020 Opinion and Order, wherein the Court denied his motion to vacate on public policy grounds and confirmed the Award. For the reasons expressed herein, the Court finds that Petitioner has failed to meet his burden of demonstrating that reconsideration of the prior decision is warranted, and thus, the Motion is **DENIED**.

### I.     BACKGROUND AND PROCEDURAL HISTORY

Because the factual background of this matter is set forth in the Court's May 29, 2020 Opinion, I will only recount the necessary facts for the resolution of this Motion. On February 17, 2011, WFA hired Petitioner on an at-will basis, as a registered financial advisor at its branch office in Spring Lakes, New Jersey. Pursuant to his contract, WFA agreed to provide Petitioner with a "Transitional Bonus" of $1,202,294.00. The Transitional Bonus was to be paid in

1

installments of $12,883.50 once a month from 2011 to 2021. In addition, at separate times during his tenure at WFA, Petitioner qualified to receive four separate "Production Bonuses" of $240,459.00, because his "total gross production" exceeded specific benchmarks set forth in his contract. Like the Transitional Bonus, the Production Bonuses were paid in once-a-month installments over a specified period.

Petitioner elected to execute five separate loan agreements (the "Notes") that allowed him to receive each bonus upfront, in a lump sum amount. The terms of the Notes, among other things, required Petitioner to reimburse WFA in accordance with a schedule of debt obligations; the debt obligations were "offset" each month with the transitional and production bonus installments that Petitioner received. Moreover, each of the Notes contained an acceleration provision that was triggered upon Petitioner's termination from WFA. In such instances, WFA was entitled to "declare the entire principal balance of [each] Note immediately due and payable."

In December 2014, after conducting an internal investigation into his business practices, WFA discharged Petitioner. Thereafter, on August 4, 2015, WFA commenced a FINRA arbitration proceeding against Petitioner to recoup the outstanding principal owed on the Notes, along with interest, costs, and fees. In resolving the parties' dispute, a FINRA arbitration panel of three members (the "Panel") held over 22 separate days of hearings from December 10, 2018 to June 21, 2019. Following the conclusion of the hearings on July 26, 2019, the Panel issued a final award, finding that Petitioner was liable to WFA in the amount of $1,663,529.71 in damages.

On August 26, 2019, Petitioner filed the instant action to vacate the Award. On October 23, 2019, Petitioner submitted a brief in support of his Motion to vacate the Award, wherein he

argued that the Award is in conflict with certain fundamental pubic policies relating to earned wages. On December 2, 2019, WFA opposed Petitioner's Motion to vacate, and cross-moved to confirm the Award. On May 29, 2020, this Court entered an Opinion and Order that denied Petitioner's motion and granted WFA's cross-motion to confirm the Award. In the instant matter, Petitioner moves for reconsideration on the basis that the Court should have vacated the Award, because the Award is in conflict with certain public policies against the forfeiture of earned wages.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1 govern motions for reconsideration. In particular, pursuant to Local Civil Rule 7.1(i), a litigant moving for reconsideration must "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L. Civ. R. 7.1(i). Motions for reconsideration are considered "extremely limited procedural vehicle[s]." *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992). Indeed, requests for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

A "judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for

summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone*, 664 F.3d at 415 (quotations omitted). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citation omitted). In other words, "a motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted). Rather, a difference of opinion with the court's decision should be dealt with through the appellate process. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1998).

    **B. Analysis**

The Court previously determined that the Award did not violate "well defined and dominant" public policies against the forfeiture of earned wages, pursuant to New Jersey and Missouri labor laws. Therefore, the arbitration decision was confirmed under a deferential standard of review. *See Caputo v. Wells Fargo Advisors, LLC,* No. 19-17204, 2020 U.S. Dist. LEXIS 93856, at *18 (D.N.J. May 29, 2020). Petitioner challenges the Court's findings and argues that his bonuses do, in fact, fall within the scope of state wage labor statutes as covered "sales commissions." Petitioner's Motion, at 1. For this reason, Petitioner contends that the Award deprived him of earned wages, and the Court erred in failing to vacate the arbitrator's decision under a *de novo* standard of review.

As I explained in the prior opinion, courts are not accorded with a "broad judicial power to set aside arbitration awards as against public policy.'" *Service Employees Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 92 (3d Cir. 1992) (citation omitted). Rather, according to the

Third Circuit, this exception is "limited." *Id*; *see United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 382 (3d Cir. 1995) ("[W]e [have] explained that 'the public policy exception' to the enforcement of arbitration awards is slim indeed."). In that regard, the Third Circuit has instructed that the exception applies when "the arbitration decision and award create an explicit conflict with an explicit public policy" that is both "well defined and dominant . . . ." *Id*. (quoting *W.R. Grace Company v. International Rubber Workers Union*, 461 U.S. 757, 766 (1983)).

Petitioner contends that the New Jersey Wage and Hour Law ("NJWL"), which he attempts to invoke here, supports a strong public policy of protecting earned compensation. Under the statute, "wages" are defined to include "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J.S.A. 34:11-4.1. According to Petitioner, the following cases lend credence to his argument that incentive-based compensation plans, like his, meet the NJWL's definition of wages: *Feldman v. U.S. Sprint Com. Co.*, 714 F. Supp. 727 (D.N.J. 1999); *Mulford v. Computer Leasing, Inc.*, 334 N.J. Super. 385 (Law Div. 1999); *Martelet v. AVAX Techs., Inc.*, No. 09-2925, 2012 U.S. Dist. LEXIS 63277 (E.D. Pa. May 2, 2012).

At the outset, I note that Petitioner referenced these same decisions in his original moving brief. In fact, in the prior opinion, I reviewed and distinguished them before finding that Petitioner's bonuses are excluded forms of supplemental income under the NJWHL. In lieu of citing to "an intervening change in the controlling law" on the instant Motion, Petitioner urges the Court to "reconsider[]" cases that were rejected in the prior opinion. However, the Court, in

5

refusing to vacate the Award, found those same decisions unpersuasive, and Petitioner's disagreement with that outcome does not constitute a valid ground for reconsideration. Indeed, it is axiomatic that a litigant cannot file a reconsideration motion to "ask the Court to rethink what is had already thought through—rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990). Therefore, although the instant motion can be denied on this basis, alone, I will again explain why Petitioner's reliance on the aforementioned cases is misplaced.

In *Feldman*, the plaintiff sold telecommunications products and he received from the defendant a commission on each sale. *Feldman*, 714 F. Supp. at 728. The earned commission was not disbursed until four months after a sale, because certain "difficulties with its billing" processes prevented the defendant from calculating the amount due on an earlier date. *Id*. at 728. Following the execution of various sales orders, but before the expiration of the four-month period, the plaintiff resigned from his sales position and filed suit to recover unpaid commissions. In ruling in the plaintiff's favor, the court explained that a contrary finding would permit the defendant "to benefit unjustly from its inability to generate timely invoices." *Id*. at 729.

In *Mulford*, the plaintiff worked as a salesman who was paid a commission on the completed sales and leases of computer equipment. *See Mulford*, 334 N.J. Super. at 389. After the plaintiff became dissatisfied with a drop in his rate, the defendant agreed to provide him with $455,000 in commissions, which represented 20% of the cash profit that he had generated in computer sales and leases. *Id*. at 389-90. Despite their arrangement, the plaintiff was terminated without receiving the agreed-upon sum, and he, in turn, sued the defendant to recover outstanding commissions due. *Id*. at 392. The court ruled in the plaintiff's favor and explained

that his discharge "cannot alone . . . effect his right to [the] commissions [which he had] earned." *Id*.

In *Martelet*, the defendant hired the plaintiff to serve as its CEO, and his contract included a provision reading: "[f]or the first year of the [e]mployment [p]eriod, [plaintiff] shall receive a minimum bonus of 30% of the [e]mployee's base salary." *Martelet*, 2012 U.S. Dist. LEXIS 63277, at *2-3. Despite working for the required timeframe, the plaintiff was terminated from his position without receiving a bonus. *Id*. at *7-10. He then sued the defendant. The Defendant took the position that the bonus was not guaranteed under the contract. *Id*. at *21. However, the court disagreed, and found that the contract's language could be construed to entitle the plaintiff to a "guaranteed bonus," and that, in such an instance, the bonus would meet the definition of a wage.[1] *Id*. at *24 (citation omitted).

Here, unlike the cases cited above, where the plaintiffs' interests in the unpaid commissions had accrued, Petitioner received the vested portions of his transition and production bonuses from WFA. As I explained in the prior opinion, Petitioner was not eligible to receive a bonus award, without having first satisfied two contractual conditions. In particular, under the terms of his contract, Petitioner had to exceed certain performance-based benchmarks. In

---

[1] I note that the incentive based compensation plans in the above cases are distinguishable from the one here. For instance, in *Mulford* and *Feldman*, the plaintiffs received a specific commission rate on each individual sale that was completed, while Petitioner's bonus plan, here, is not expressed as a percentage of sales. Rather, a plain reading of Petitioner's contract reveals the he was entitled to receive a lump sum bonus upon exceeding certain sales quotas set forth in his contract. Indeed, § 4(d) provides as follows: "[i]f your total gross production equals or exceeds $865,652.00 . . . you will be eligible to receive a [Production Bonus Award] of $240,459.00." Agreement, § 4(d). Thus, while the plaintiffs in *Mulford* and *Feldman* were entitled to a certain percentage of generated sales under their incentive plans, Petitioner received nothing unless he met specified contractual benchmarks. Moreover, the *Mulford* court was tasked with determining whether a "guaranteed" bonus, not a performance-based award, like the one here, could fall within the scope of the NJWL.

addition, and in contrast to the cases that he relies upon in seeking reconsideration, Petitioner was required to retain his position at WFA for a particular period of time (the "Bonus Period") for his bonus to vest in full. The second condition is set forth in § 5(b) of the agreement and reads:

> Your receipt of continued payments on your Bonuses is conditioned upon your continued active employment with [WFA] and holding the functional title of Financial Advisor (or the equivalent). In the event your employment terminates for any reason . . . or if you no longer hold the functional title of Financial Advisor (or the equivalent), then you will no longer be eligible to receive any further payments on any Bonuses and you will forfeit any unpaid installments or other amounts due under the Bonuses.

Agreement, § 5(b).

The five bonuses that Petitioner qualified for were structured so that he would receive them on a periodic basis. Indeed, the bonuses were paid in separate installments on a once-a-month basis over the course of a specific timeframe, and the continued receipt of those installments was subject to § 5(b) of Petitioner's contract.[2] However, as explained above, Petitioner chose to execute five loan agreements (the "Notes") that equaled each of his incentive-based bonus awards. Therefore, in practical effect, the Notes served as "compensation advances" which allowed Petitioner to obtain future installments—to which he was otherwise not entitled—in the form of an upfront immediate lump sum.[3] *See Wells Fargo Advisors, LLC v. Watts*, 858 F. Supp. 2d 591, 602 (W.D.N.C., 2012) (citing *Banus v. Citigroup Global Mkts., Inc.*, No. 09-7128,

---

[2] To be clear, Petitioner's transition and production bonuses were both subject to § 5(b) of his contract.

[3] For background purposes, I note that WFA continued to remit transitional and production bonus installments to Petitioner each month, in amounts that offset the obligations coming due under his Notes. Upon his termination, WFA ceased remitting the bonus installments to Petitioner.

8

2010 U.S. Dist. LEXIS 40072, at *7 (S.D.N.Y. Apr. 23, 2010)). The arbitration award that was entered against Petitioner did nothing more than require him to return the unvested portion of his bonuses that he would not have otherwise acquired but for the execution of the Notes. Thus, the Award neither deprives nor requires Petitioner to forfeit earned wages, and its enforcement does not violate public policies under state labor laws, as I held in the prior opinion.[4]

Moreover, Petitioner's position that § 5(b) operates as an illegal forfeiture under the NJWL has no merit. Indeed, courts in this district have enforced bargained for provisions that require workers to remain with a firm for a specific duration before a bonus accrues. For instance, in *Bintliff-Ritchie v. Am. Reinsurance Co.*, No. 05-3802, 2007 U.S. Dist. LEXIS 10469 (D.N.J. Feb. 15, 2007), the plaintiff participated in an incentive-based plan that included a bargained for retention provision. *Id.* at *13-14. Although the plaintiff had been approved to receive a $112,000 performance-based bonus, she was terminated from her job before the contractual date on which it was paid. *Id.* at *14. In finding that the bonus did not constitute an earned wage under the NJWPL, the court explained that the plaintiff's interest in the award had not "vested," and thus, she could not recover the funds under the statute.[5] *Id.* at *14-15; *see also*

---

[4] Petitioner contends that the Award violates Missouri wage labor laws which, like the NJWL, protects earned wages, and he cites to the same lone unpublished decision that he relied upon in his original moving brief, *Gustafson v. SAP Am. Inc.*, No. 14-1497, 2015 U.S. Dist. LEXIS 43999 (E.D. Mo. Apr. 3, 2015). However, as I explained in the previous opinion, Petitioner's reliance on *Gustafson* is misplaced; the issue, there, did not concern whether bonus awards paid in connection with an incentive based compensation plan constitute earned wages under Missouri labor law. Petitioner references no additional Missouri cases in seeking reconsideration.

[5] Petitioner avers that he was discharged without cause, and WFA prevented him from retaining his job through the Bonus Period so that he could earn additional bonus installments. To the extent that Petitioner maintains that WFA's bad faith conduct prevented him from fulfilling his contractual duties, this position does not implicate notions of public policy. Rather, such arguments are rooted in traditional principles of contract law, which are insufficient to disregard the deferential standard of review that is accorded to an arbitrator's decision. Nevertheless, I note that, based on the Award entered in favor of WFA, the Court can infer that

*Schweikert v. Baxter Healthcare Corp.*, No. 12-5876, 2015 U.S. Dist. LEXIS 98627, at \*29 (D.N.J. July 29, 2015) (finding that the plaintiff was not entitled to receive a retention bonus, because he failed to retain his position with the defendant throughout the entire duration of the applicable period).

Because Petitioner, on reconsideration, fails to demonstrate that the Award conflicts with "well defined and dominant" public policies under state wage labor statutes, the Panel's decision is entitled to "a strong presumption of correctness." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Schwarzwaelder*, 496 Fed. Appx. 227, 232 (3d Cir. 2012). Under this standard, "[t]he role of the courts is to ask only whether the parties . . . got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second would produce a rational award." *Id*. For the reasons explained in the previous opinion, which the Court need not reiterate here, the Panel's decision to enforce each of the Notes against Petitioner as a legitimate loan instrument finds sufficient support in the record. Indeed, in seeking reconsideration, Petitioner does not contend that the Award is based on a "completely" unreasonable or irrational interpretation of the Notes, and therefore, the Panel's decision in favor of WFA remains undisturbed. *Id*. (internal citation omitted).

I note that other district courts have confirmed arbitration decisions to enforce executed notes, like the ones here, between a financial advisor and an employer as bona fide loan

---

the Panel, which conducted more than 22 separate hearings from December 10, 2018 to June 21, 2019, concluded that WFA did not act in bad faith in terminating Petitioner. While their decision could have provided more detail in this regard, it is-well established that "[an arbitration] award may be made without explanation of [its] reasons . . . . " *Wilko v. Swan*, 346 U.S. 427, 436 (1953); *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 168 (3d Cir. 1986) ("Arbitrators have no obligation to the court to give their reasons for an award.") (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960)).

instruments. For instance, in rejecting a litigant's request to vacate an arbitration award, the Southern District Court of New York, in *Banus v. Citigroup Global Mkts., Inc.*, No. 09-7128, 2010 U.S. Dist. LEXIS 40072, *7, (S.D.N.Y. April 23, 2010), provided the following succinct explanation:

> To begin with, plaintiffs signed the Notes, received the substantial loan proceeds (interest free it should be noted), and had the ability to use those proceeds for any purpose they chose, not least of them being the investment of the loan proceeds to generate interest income or capital gains. There was no lack of consideration or mutuality . . . . In this case, the loan proceeds were paid to the plaintiffs at the start of their employment and were to be repaid out of their annual compensation during the continuation of that employment. There is nothing inequitable about accelerating any unpaid balance where a broker left [a firm] before fully repaying the loan.

*Id*. at *34; *see also Wells Fargo Advisors, LLC v. Watts*, 858 F. Supp. 2d 591, 602 (W.D.N.C. March 9, 2012) (enforcing a loan agreement between a financial broker and WFA, and explaining that "[t]he . . . note in this case was simply not in violation of any public policy, or otherwise illegal, such that the arbitrator's award could be vacated."). Therefore, Petitioner has failed to provide sufficient grounds to vacate the Award, nor has he satisfied any of the basis for granting a motion for reconsideration. Accordingly, Petitioner's Motion for reconsideration is denied.

### III.   CONCLUSION

For the reasons set forth above, Petitioner's Motion for reconsideration is **DENIED**.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge